IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 11-CV-136-JPG/PMF |
| | ) | |
| CINCINNATI INSURANCE COMPANY, SHERRY HEUER, and STEPHEN C. MATHER, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter coming before the Court on defendant Stephen C. Mather's motions to dismiss (Doc. 7) and for summary judgment (Doc. 19) and on the United States of America's motion for summary judgment (Doc. 11).

**I.     Background**

This matter arose after defendants Mather and Sherry Heuer were in a car accident in late 2008. Mather was injured in the accident and, because he was an active duty United States Air Force ("USAF") officer, received medical care from Scott Air Force Base Medical Treatment Facility that is valued at $5,265.15. TRICARE, the health care coverage program for uniformed service members, also paid $10,732.24 to civilian health care treatment for Mather. Additionally, Mather was placed on convalescent leave from the Air Force, which was valued at $5,967.78.

In March 2009, the USAF sent notice to Heuer's insurer, defendant Cincinnati Insurance Company ("CIC"), that it was claiming payment for the reasonable value of Mather's medical care. It continued to notify CIC of the increasing value of its claim until it reached $21,965.17 on October 26, 2010. Also on that day, Mather's counsel Stephen R. Clark asked Medical Cost

Reimbursement Program paralegal Susan Thompson to request a reduction of the USAF's lien. Thompson sent him a letter informing him that the USAF's claim against Heuer was independent of Mather's injury claim and that it could not be settled for less than the full amount without the United States' approval. The letter further outlined the information Clark would need to provide in writing before the United States would consider reducing its lien. Clark never responded to that letter.

In the meantime, in May 2010 Mather sued Heuer in state court, and in late 2010, CIC issued a check in the amount of $21,965.17 payable to Mather, Clark's law firm and the USAF as part of the settlement of that case. As part of the settlement agreement, Mather agreed to indemnify CIC if it was liable to the United States. On November 18, 2010, Clark mailed the USAF a "Petition to Adjudicate Liens" and filed it in the state court action the following day. The petition was not served on the designated USAF official, the United States Attorney General or the United States Attorney for the Southern District of Illinois. In a letter dated December 6, 2010, Thompson sent the court a letter stating that under the Federal Medical Care Recovery Act ("FMCRA"), 42 U.S.C. § 2651, the USAF has a right to recover medical expenses independent of Mather's right of recovery and that Clark did not represent the interests of the USAF. The court filed the letter on December 9, 2010. Notwithstanding the letter, on December 20, 2010, the court entered an order adjudicating liens on the $21,965.17 tendered by CIC, including the amount to be paid to the USAF. That order awarded $15,997.39 to the USAF attributable to medical care costs, less $5,332.46 in attorney's fees to Clark pursuant to the common fund doctrine, for a total award to the USAF in the amount of $10,664.93.

On February 22, 2011, the United States sued CIC, Mather and Heuer in federal court under the FMCRA for $21,965.17. Funds in that amount were deposited with the Court in May

2011. Mather now asks the Court to dismiss the United States' claim because he believes it seeks to relitigate in a federal district court the judgment adjudicating liens entered in state court, which he believes is forbidden by the *Rooker-Feldman* doctrine. The United States and Mather have also filed cross-motions for summary judgment. There are no material disputed facts, and the parties argue as to who is entitled to judgment as a matter of law.

## II. Analysis

### A. FMCRA

The FMCRA provides the United States a right to recover for medical care it provides to an injured person:

> In any case in which the United States is authorized or required by law to furnish or pay for hospital, medical, surgical, or dental care and treatment . . . to a person who is injured . . . under circumstances creating a tort liability upon some third person . . . to pay damages therefor, the United States shall have a right to recover (independent of the rights of the injured or diseased person) from said third person, or that person's insurer, the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for and shall, as to this right be subrogated to any right or claim that the injured or diseased person . . . has against such third person to the extent of the reasonable value of the care and treatment so furnished, to be furnished, paid for, or to be paid for.

42 U.S.C. § 2651(a). It also provides a right to recover the cost of paying an injured uniformed servicemember who is unable to perform his duties:

> If a member of the uniformed services is injured . . . under circumstances creating a tort liability upon a third person . . . for damages for such injury or disease and the member is unable to perform the member's regular military duties as a result of the injury or disease, the United States shall have a right (independent of the rights of the member) to recover from the third person or an insurer of the third person, or both, the amount equal to the total amount of the pay that accrues and is to accrue to the member for the period for which the member is unable to perform such duties as a result of the injury or disease and is not assigned to perform other military duties.

42 U.S.C. § 2651(b).

To enforce either of these rights to recovery, the United States may directly intervene in an action brought by the injured party against the tortfeasor or the tortfeasor's insurer or, if the injured party has not brought suit within six months of the beginning of the medical care, may bring a separate lawsuit against the tortfeasor, the tortfeasor's insurer, or other responsible party. 42 U.S.C. § 2651(d). Additionally, the United States may consent to the injured party's attorney's representing its interests "for the sole use and benefit of the United States in accordance with [the FMCRA] with the consent of the United States" in an underlying tort suit. *See Cockerham v. Garvin*, 768 F.2d 784, 786 (6th Cir. 1985); *McCotter v. Smithfield Packing Co., Inc.*, 868 F. Supp. 160, 163 (E.D. Va. 1994).

As noted in the statutory provisions, the United States' right of recovery is independent of the injured party's right to recover, *Government Emp. Ins. Co. v. United States*, 376 F.2d 836, 837 (4th Cir. 1967); *United States v. Jones*, 264 F. Supp. 11, 13 (D. Va. 1967), and is subrogated "only in the sense that it may not sue in situations where state law negates the creation of tort liability in the third person," *United States v. Theriaque*, 674 F. Supp. 395, 399 (D. Mass. 1987); *accord United States v. York*, 398 F.2d 582, 584 (6th Cir. 1968). Thus, any settlement between the injured party and the tortfeasor or the insurer – at least one which knows or should know of the United States' claim to reimbursement under the FMCRA – does not bind the United States unless it agrees to be bound. *See York*, 398 F.2d at 584; *Theriaque*, 674 F. Supp. at 397-98; *Jones*, 264 F. Supp. at 14; *United States v. Guinn*, 259 F. Supp. 771, 773 (D.N.J. 1966).

The purpose of the FMCRA was to provide the United States a way to recover from tortfeasors whose wrongful acts created the need for the United States to provide free medical care to military personnel. *United States v. United Services Auto. Ass'n ("USAA"))*, 5 F.3d 204, 207 (7th Cir. 1993). Prior to its enactment, the Supreme had held in *United States v. Standard*

*Oil Co.,* 332 U.S. 301 (1947), that "absent a federal statute, the United States could not recover medical costs from third-party tortfeasors who injured military personnel." *USAA*, 5 F.3d at 207 n. 4. Under the FMCRA, tortfeasors could no longer escape financial responsibility for the consequences of their wrongful acts and the United States could recover for care necessitated by those acts. *See id.* at 207. Additionally, injured parties who were able to recover for the value of medical services provided to them for free would no longer be able to keep that windfall award. *United States v. Trammel*, 899 F.2d 1483, 1486-87 (6th Cir. 1990).

  B. <u>Motion to Dismiss (Doc. 7)</u>

  Mather argues that under the *Rooker-Feldman* doctrine this Court does not have jurisdiction to decide this case because it is essentially an invitation to relitigate issues already decided by the state court's lien adjudication order. The *Rooker-Feldman* doctrine, established in the cases *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), prevents a party from attempting to relitigate in federal district court a judgment entered in state court. *Feldman*, 460 U.S. at 486; The *Rooker-Feldman* doctrine only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).

  The *Rooker-Feldman* doctrine does not apply in this case because the United States was not a party to the state court action. Although Mather mailed his motion for adjudication of liens to Thompson via regular United States mail, he did not serve it (or obtain waiver of service) in any manner recognized as proper service of process on a federal agency. *See, generally*, 735 ILCS 5/2-201 *et seq.*; Fed. R. Civ. P. 4(i)(2). Furthermore, although Thompson sent a letter to

the Court on behalf of the USAF, as a matter of law she did not – and indeed could not, for she is not an attorney – appear in the case on behalf of the USAF. On the contrary, Thompson's letter affirmed that Clark did not represent the USAF's interests under the FMCRA. Thus, the United States was never a party to the state court action. Therefore, it could not be a "state-court loser" seeking to reject an adverse state court judgment by resort to federal court. For this reason, the *Rooker-Feldman* doctrine does not deprive this Court of jurisdiction to hear the pending lawsuit. It has original subject matter jurisdiction over this suit under 28 U.S.C. §§ 1331 (federal question) and 1345 (United States as plaintiff).

    C.    <u>Cross-motions for Summary Judgment (Docs. 11 & 19)</u>

The United States asks the Court to enter judgment in its favor because there is no dispute that (1) the United States timely asserted its lien by notifying CIC and Clark, (2) that the United States did not ask or hire Clark to represent its interests, (3) that the United States did not consent to Clark's representation of its interests or settlement of its claim, (4) that Mather did not assert any claim "for the sole use and benefit of the United States in accordance with [the FMCRA] with the consent of the United States" and (5) that the United States is not bound by Mather's settlement. Under the undisputed fact, the United States argues it is entitled to judgment as a matter of law.

On the other side, Mather argues that the FMCRA does not give the United States the power to recover from him, as opposed to a tortfeasor or a tortfeasor's insurer. In support of this argument, it points to *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir.), *cert. denied*, 537 U.S. 816 (2002), and *United States v. Ammons*, 242 F. Supp. 461 (D. Fla. 1965).

Mather is correct that there is some caselaw holding the United States cannot sue an injured party and can only sue the tortfeasor or its insurer under the FMCRA. *Dow Corning*

involved a plan to settle a class action in which the United States' right to sue under the FMCRA was to be cut off after the relevant class member had been paid a settlement. *Dow Corning*, 280 F.3d at 660. The court held that the settlement plan did not adequately protect the United States' right to recovery because the United States has no express right under the FMCRA to pursue recovery from an injured party who has received compensation for services rendered free of charge by the United States. *Id.* at 660-61. Similarly, in *Ammons*, the injured party settled with the tortfeasor but refused to pay the United States for free care it had provided to him as a result of his injury. *Ammons*, 242 F. Supp. at 462. The court noted, "Nowhere in the law is the United States permitted to bring an action against the serviceman," and dismissed the United States' claim against the injured party. *Id.*

In this case, however, the United States has not sued Mather for money he has received from CIC. In fact, he has not received the money CIC has placed into the Court's treasury account. Mather is only named as a defendant because he will be bound by any judgment in this case, including any order as to the disposition of those funds. Thus, neither *Dow* nor *Ammons* entitles Mather to judgment in this case. Furthermore, allowing the United States to recover from CIC money which would be a windfall to Mather, for he did not bear any costs for his medical care, would be consistent with the purpose of the FMCRA to reimburse the United States for medical costs necessitated by tortfeasors and to avoid windfalls to injured parties who manage to recover the value of their medical treatment.

Mather also argues that any award to the United States should be reduced in light of certain equitable considerations such as (1) whether the United States passively allowed Mather to bear the risks and costs of litigation, (2) whether the settlement amount reflects a settlement

7

discount, and (3) whether an agreement exists between the parties as to the government's right to reimbursement. *See Cockerham v. Garvin*, 768 F.2d 784, 787 (6th Cir. 1985).

*Cockerham* is inapplicable to the case at bar. In *Cockerham*, the injured plaintiff and the tortfeasor settled on the eve of trial and included in that settlement the creation of an escrow account to cover future claims by the United States under the FMCRA for free medical care provided to the plaintiff. *Id.* at 785. In that case, unlike the case at bar, the plaintiff had expressly sought to recover the value of medical services "for the sole use and benefit of the United States in accordance with [the FMCRA] with the consent of the United States." *Id.* at 786. The parties could not agree how to divide the money in the escrow account. *Id.* at 785. The court noted that although the FMCRA provided the basis for the United States' right to recovery, the action itself was not under the FMCRA and was, in truth, a contract action in which the United States was a fund beneficiary. *Id.* at 787. As a consequence of the action's not being under the FMCRA, the court applied equitable considerations to determine the distribution of the escrow fund. *Id.* The court remanded the case to consider the proper division of escrow funds in light of the three previously mentioned equitable factors. *Id.* In *Mosey v. United States*, 3 F. Supp. 2d 1133 (D. Nev. 1998), the court applied the equitable factors discussed in *Cockerham* and considered the fact that the plaintiff had paid out no funds for her medical care, the cost of which was born totally by the United States, in a declaratory judgment action to reduce the government's award. *Id.* at 1136.

The Court does not consider equitable factors in this case. This is a straightforward application of the FMCRA in a case brought by the United States against a tortfeasor's insurer for recovery of funds expended on Mather's medical care and his lost wages. The statute provides for no equitable considerations or for payment of plaintiff's attorney's fees, and none of

the special circumstances from *Cockerham* or *Mosey* – this is not a contract dispute as in *Cockerham* or a declaratory judgment action as in *Mosey* in which the injured party sought damages "for the sole use and benefit of the United States in accordance with [the FMCRA] with the consent of the United States"– exist in the case at bar.

Even if the Court did consider equitable factors, it would find the United States entitled to full reimbursement of its losses. The United States did not passively allow Mather to bear all the burdens and risk of litigation for "the sole use and benefit of the United States in accordance with [the FMCRA] with the consent of the United States." On the contrary, it repeatedly asserted its independent claim to CIC as Mather's medical costs kept rising and maintained the position that Clark did not represent the United States and could not settle claims on its behalf. The case settled only about six months after it was filed and about a month after Mather's final medical treatment, which certainly evidences no undue delay in asserting the United States' rights in the interim. The mere fact that the United States could have intervened but did not is not enough to find it passively stood by while Mather bore all the risk. There is no evidence Mather's settlement reflects a discount of any sort, and there is no evidence of an agreement between any of the parties about the United States' right to reimbursement. In fact, the United States invited Clark to submit a request for a reduction of its lien so that such an agreement could be reached, but Clark ignored that invitation. Finally, the Court is mindful that Mather did not pay out of pocket for his medical treatment. Allowing a reduction of the United States' lien would provide him a windfall in that it would allow him to recover personally for services provided to him by the United States for free.

In the Court's opinion, this entire situation has been created because Clark overreached as to his authority to settle claims in this case, and CIC did not perform due diligence on the claims

it believed it was settling. As noted in *United States v. Greene*, 266 F. Supp. 976, 979 (N.D. Ill. 1967), Clark was not authorized to seek an award based on medical treatment provided free of charge to Mather without the consent of the United States, which he did not obtain. Nevertheless, in his petition to adjudicate liens he represented to the state court that he recovered amounts due to the United States. On the other side, CIC was clearly aware of the USAF's claim under the FMCRA – it wrote its check for the exact amount of those claims – and should have been aware that Clark had no authority to settle those claims. Nevertheless, it issued the settlement check jointly to Mather, Clark's firm and the USAF, presumably under an erroneous belief that the settlement included those claims. However, it had the foresight to negotiate an indemnity agreement in the settlement agreement.

A few things are clear. Under the FMCRA, United States is entitled to $21,965.17 from CIC as recovery for medical services provided free of charge to Mather and for Mather's lost work. The United States is entitled to a judgment to that effect. Mather's settlement with CIC did not waive the United States' claim because the United States did not authorize Mather to represent its interests or to settle its claim in the state court suit. Therefore, any release in the settlement documents only binds Mather, not the United States.

As for the money deposited in the Court, no matter how the Court divides those funds, CIC will end up paying the full $21,965.17 to the United States out of the sum it agreed to give to Mather for his various claims. If the Court awards only the costs of Mather's medical treatment, $15,997.39, to the United States from the funds (for the underlying suit did not assert the United States' lost wage claim), it will award a judgment against CIC of the remaining $5,967.78 in lost wages. CIC will, in turn, seek indemnification from Mather under the settlement agreement for that amount. Similarly, if the Court awards only a money judgment

against CIC, CIC will still seek indemnification from Mather.  In the end, the United States is entitled to an amount equal to the amount CIC deposited with the Court, and the Court will avoid additional meaningless legal formalities by entering judgment and distributing the fund accordingly.  The impact of this result on CIC's compliance with its settlement agreement with Mather is not a matter before the Court and, if in dispute, should be resolved in another forum.

**III. Conclusion**

For the foregoing reasons, the Court:

- **DENIES** Mather's motion to dismiss (Doc. 7);

- **DENIES** Mather's motion for summary judgment (Doc. 19);

- **GRANTS** the United States of America's motion for summary judgment (Doc. 11);

- **ORDERS** the United States to provide within seven days an address to which the funds in the Court registry should be distributed; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**Dated:  August 11, 2011**

> s/J. Phil Gilbert
> **J. Phil Gilbert**
> **United States District Judge**